UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

JEFF B. BERGER,                                                    Case No.  09-50715

                                Debtor.                            Chapter 11

--------------------------------------------------------X

## DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM
## THE AUTOMATIC STAY

Norma E. Ortiz, a partner of Ortiz & Ortiz, L.L.P., and proposed counsel to the above-caption debtor, hereby states as follows in opposition to the Motion of Creditor for Relief From Stay ("Motion") filed by Dr. Bella Aloyts (the "Movant"):

<u>Background</u>

1.      Jeff Berger (the "Debtor") filed a chapter 13 bankruptcy petition on December 4, 2009.  An order converting the case to a chapter 11 case was entered on February 25, 2010.

2.      The Debtor has had no less than three prior counsel in his bankruptcy case.  The undersigned was retained by the Debtor on April 8, 2010.

3.      The Debtor has appeared at two Section 341 meetings conducted by the U.S. Trustee and the meeting was closed.

4.      The Debtor timely filed his first operating report.

5.      The Debtor is attempting to sell, subject to the Court's approval, his two Brooklyn co-operative apartments, located at 601 Brightwater Court, Brooklyn, New York (the "Building"), to fund a plan of reorganization.

6.      The Debtor's Schedule F lists over $90,000 in unsecured debt that does not include the Movant's unliquidated claim against the Debtor.

7.      The Debtor's wife filed a Chapter 13 petition that is pending before the Court.

The Debtor's wife is not a party to the Movant's action.  Both the Debtor and his wife have

many creditors other than the Movant.

A.   *The State Court Litigation*

8.      Annexed hereto as Exhibit 1 is a copy of the Declaration of Jeff Berger (the

"Declaration") that was prepared in response to the Motion.  As stated at length therein, the

Debtor became the president of the Building's co-operative corporation (the "Co-op") in or

about October 2005.  Prior to his appointment as president, the Co-op entered into a lease for the

commercial space located in the Building's basement with the Movant and Dr. Edith K. Kovnat

(collectively, the "Plaintiffs").  The Plaintiffs intended to construct a medical office in the space

by joining the commercial basement space with a first floor residential apartment.

9.      The construction commenced a short time before the Debtor became the Co-op's

president.  The Debtor asserts that the Plaintiffs never obtained the Co-op's approval within

the time specified in the lease and the Plaintiff commenced construction without such approval.

The Plaintiffs dispute that fact.  As set forth in the Declaration at paragraph 12, the Debtor

believed that the Plaintiffs were proceeding improperly with the construction.  In fact, at one

point, a second floor tenant complained to him that their floors inexplicably began to sag.  When

an engineer inspected the apartment, the engineer informed the Debtor that a structural beam had

been cut during the Plaintiff's construction that adversely affected the building's structure.

10.     The Plaintiffs commenced an action against the Debtor and the Co-op in 2006 that

the Debtor has been forced to defend personally since that time.  In 2006, the Co-op issued a

Notice to Cure to the Plaintiffs that threatened to terminate the lease.  The action sought to enjoin

the Co-op and preserve the lease, and sought damages against the Debtor and the Co-op for what the Plaintiffs characterize as interference with construction and failure to cooperate.  The actions seeking to preserve the lease were denied by the state court.  The only remaining actions seek damages against the Co-op and Debtor.

11.    Since the action was filed, the lease has been terminated and the New York City Department of Buildings ("DOB") has revoked all permits and applications in 2008 for, among other things, non-compliance with the requisite rules and regulations.  Annexed to the Declaration as Exhibits A and B are the opinions of two engineers confirming that the Plaintiffs failed to properly prosecute the requisite paperwork needed to comply with New York City Building Code and Rules.  As set forth in the Declaration, it is hard for the Debtor to fathom how the Plaintiffs intend to establish that the Co-op and the Debtor caused their damages when it was the City that forced them to stop the project when they did not comply with the governing law.

12.    The Debtor believes that there is simply no reason why the Plaintiffs can not proceed with the trial against the Co-op and attempt to fix the amount of their claim.  As set forth in Exhibit E to the Declaration, Judge Demarest has suggested that there is no reason for the trial not to proceed without the Debtor since the Co-op is the owner of the Building and the party responsible for the Debtor's action.  Although the Debtor does not suggest that Judge Demarest has ruled on this issue, Judge Demarest's comments echo the Debtor's view that the action was only properly brought against the Co-op, and not the Debtor individually.

## THE MOTION SHOULD BE DENIED

13.    The Movant requests that the Court lift the automatic stay to permit her to proceed with the state court litigation.  She asserts that judicial economy supports cause under 11

U.S.C. § 362(d), since the dispute only depends upon state law, discovery has been completed, and the only reason the bankruptcy case was filed was to hinder and delay the stat court litigation.  But the Debtor asserts that under the circumstances of this case, the Movant has failed to establish cause and the Motion should be denied.

A.    *Application of the Sonnax Factors Militate Against Lifting the Stay*

14.    As the Court recently stated, "The automatic stay is a fundamental debtor protection designed to promote equal treatment among creditors and to provide the debtor with a "breathing spell" from the "financial pressures that drove [the debtor] into bankruptcy." In re Taub, 413 B.R. 55, 60 ((Bankr. E.D.N.Y. 2009) (citing Eastern Refractories Co. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir.1998)).  For this reason, the burden for demonstrating cause to lift the stay is on the Movant.  Id. at 61 (citation omitted).  The Debtor is in dire need of such a breathing spell after all of these years of litigation.  Moreover, since he has many other creditors, he requires additional time to work on reorganizing his affairs before he is plunged back into litigation before the state court.

15.    Since the term "cause" is not defined, determining the existence of cause under Section 362(d)(l) involves the balancing of "the inherent hardships" caused by the imposition of the automatic stay, while taking into account "the totality of the circumstances." See, e.g., In re Baptist Medical Center of New York, Inc., 52 B.R. 417, 425 (E.D.N.Y. 1985), aff'd 78 F.2d 973 (2nd Cir. 1986).  To assist the courts in determining the existence of cause when a movant seeks to lift the stay to continue pre-petition litigation, the Second Circuit provided guidance in In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990).  In Sonnax, the court listed 12 non-exclusive factors the courts may consider when determining the existence of cause:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

Id. at 1286.

16.     The majority of the applicable Sonnax factors militate against lifting the stay at this time for the following reasons.  Requiring the Debtor to proceed with a trial when he can not afford to pay counsel fees would create a significant hardship for him at this time.  It would require the Debtor's direct participation in the trial and interrupt his efforts to reorganize his affairs.   The Debtor does not have an insurer defending him, and the continued defense of the action is presently beyond the Debtor's means.  As noted by Judge Demarest, the action primarily involves the Co-op, and not the Debtor, and can proceed to judgment against the Co-op without the Debtor.   There is no question that the minimal impact on Movant, by proceeding against the Co-op to judgment, does not outweigh the harm to the Debtor by proceeding at this

time.   For these reasons, the Debtor submits that the Movant has not established cause to lift the

stay under the present circumstances of this case.

B.    *The Court May Consider the Plaintiff's Likelihood of Success When Determining the Existence of Cause*

17.    Finally, the Debtor asserts that the Court may consider the likelihood of success

on the merits of the underlying cause of action when considering whether cause exists to lift the

stay.  In <u>In re The SCO Group, Inc.</u>, 395 B.R. 852, 857 (Bankr. D. Del. 2007), the court noted

that, in addition to the <u>Sonnax</u> factors, one of the factors considered by the Delaware courts is

the probability the creditor will prevail on the merits.  Since <u>Sonnax</u> contains a non-exclusive list

of factors, the Debtor submits the Court may consider additional factors.

18.    In this case, the Plaintiffs have a very strong burden to meet in establishing that

the Debtor acted in an ultra vires manner and beyond the scope of his duties as an officer of the

Co-op.  In New York, there is a strong presumption against permitting an action to proceed

against an individual director or officer of a co-operative corporation unless a plaintiff pleads

with specificity independent tortious acts by an individual defendant in order to overcome the

public policy that supports the business judgment rule that is applied to the decisions made by

corporations.  The Plaintiffs bear a heavy burden to demonstrate that the Debtor acted

wrongfully other than as an officer or director of the Co-op.  <u>E.g.</u>, <u>Pelton v. 77 Park Ave. Condo</u>,

825 N.Y.S.2d 28, 34 (1st Dept. 2006).  No adequate allegation is made in the complaint.

Moreover, given the fact that the Plaintiffs are effectively asserting the same wrong doing

against the Co-op and the Debtor – damages caused by interference with the construction – the

very acts complained of against the Debtor are acts that would have been taken by an officer on

6

behalf of the Co-op.  Moreover, the fact that an independent third party – the DOB – halted the Plaintiffs construction because it was illegal further supports a preliminary finding by this Court that the likelihood of the Plaintiffs'  success against the Debtor individually is highly unlikely. For this reason, the Debtor submits that the Movant has failed to meet her burden the Motion should be denied.

WHEREFORE, the Debtor requests that the Court deny the Movant's request.

Brooklyn, New York
April 23, 2010

_S/ Norma Ortiz_
Norma E. Ortiz, Esq. (NO 0748)
Ortiz & Ortiz, L.L.P.
127 Livingston Street
Brooklyn, New York 11220
Tel. (718) 522-1117
Debtor's Proposed Counsel

Exhibit 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:

JEFF B. BERGER,                                              Case No.  09-50715

                          Debtor.                          Chapter 11

------------------------------------------------------X

## DECLARATION OF JEFF BERGER

The undersigned, being duly sworn, states:

A.  <u>Brief History of the State Court Litigation</u>

1.      I am a defendant in an action captioned as "Bella B. Aloyts and Edith K. Kovnat

v. 601 Tenants Corp. and Jeff Berger" that is pending in the Supreme Court, Kings County,

before the Hon. Carolyn Demarest under Index No. 30043/06 (the "Action").  One of the

Plaintiffs in that action, Dr. Bella Aloyts (the "Movant"), has moved the Court for relief from the

automatic stay (the "Motion") to continue to prosecute the Action.  The Action arises from the

Plaintiffs' failed attempt to establish a medical office in the building known as 601 Brightwater

Court, Brooklyn, New York (the "Building").

2.      I own two co-operative apartments in the Building.  I became the president of the

co-operative board (the "Board") on or about October 2005.

3.      As set forth in the Complaint annexed to the Motion as Exhibit A, the Plaintiffs

obtained a commercial lease from the Building's co-operative corporation (the "Co-op") for the

basement space of the Building to build a medical office.

4.      The Complaint fails to mention that the one of the Plaintiffs also leased a first

floor residential apartment.  Upon information and belief, the Plaintiffs intended to provide

access to the basement from the first floor space.  In order to do so, they needed to join the two

spaces and construct a stairway between the basement and first floor premises.

5.      The basement lease provided to the Plaintiffs contained a clause that required the

Board's approval of the building plans prior to commencement of construction.   Moreover, under the terms of the basement lease, the Plaintiffs were given 90 days from execution of the lease to, among other things, submit a building department application to the Board.

6.      In fact, in order to construct the medical office, an architect was required to file plans, specifications, and drawings with the New York City Department of Buildings ("DOB"). I was informed that the Plaintiffs filed the wrong form with the DOB and falsely prepared the application.  See Affidavit of Henry Marek, Professional Engineer, annexed hereto as Exhibit A, dated June 6, 2007.  Moreover, the manner in which the Plaintiffs attempted to convert the first floor residential apartment to a commercial space violated, among other things, DOB rules and regulations.  See Letter Dated September 19, 2009, from Urban Engineering, P.C., annexed hereto as Exhibit B.

7.      The failure to comply with the applicable rules and regulations is evidenced by the fact that the Building Commissioner issued a stop-work order on all construction in December 2005:  a few months after construction commenced in or about September 2005.  All applications and permits were revoked by the DOB in April 2008.  See Letter dated April 4, 2008, from the DOB annexed as Exhibit C.  Upon information and belief, no appeal of this decision was taken by the Plaintiffs.

8.      As set forth the Complaint, the Plaintiffs commenced the Action in 2006 against me individually and the Co-op corporation, 601 Tenants Corp.  The Complaint contains the following prayers for relief:

- a judgement against the Co-op declaring the lease in full force and effect;

- an injunction against the Co-op preventing it from terminating the lease;

- $750,000 in damages against the Co-op for its alleged interference with construction and failure to cooperate;

- •  damages against me for $250,000 or $500,000 resulting from my alleged ultra vires acts that interfered with construction;

- •  and judgment against the Co-op alleging it hindered construction.

Another copy of the complaint is annexed as Exhibit D.  Therefore, all but one of the causes of actions are asserted against the Co-op, not me.

9.       The Plaintiffs did not prevail on the first and second causes of action, and the leases have been terminated by the Co-op.  Upon information and belief, the Plaintiffs have not paid the Co-op any rent for the basement space since December 2004 and any maintenance for the residential apartment since 2006.

B.  The One Claim Against Me Personally

10.      The only claim pending against me personally is the assertion that I engaged in ultra vires acts that hindered construction by complaining to the DOB and deeming the lease a nullity.  But the lease has been terminated and the DOB has found, on many occasions, that the Plaintiffs did not, among other things, comply with the law.  I do not understand how I can be held personally liable for protecting the Co-op from improper construction.  Moreover, since the lease was not terminated by me personally, and the DOB revoked all permits and applications because of the Plaintiffs' actions, how could any of my actions caused these events?

C.  The Motion for Relief from the Automatic Stay

11.      The Movant asks the Court to require me to continue defending this action by lifting the automatic stay to permit the action to proceed.  I must note that the description of the facts contained in the Motion are inaccurate.  In support of her request, the Movant alleges, at paragraph 6 of the Motion, that "...the Board approved those plans that were ultimately submitted to the Department of Buildings."  But the lack of Board approval is a material disputed fact in this case.  In fact, as forth on page 2 of Judge Demarest's decision dated April 13, 2009,

that is annexed to the Motion, Judge Demarest states that "The primary issue of fact at present is whether plaintiffs did obtain approval of the board of directors for the proposed construction prior to Mr. Berger's tenure as president or whether they failed to do so and fraudulently obtained a work permit for construction by filing a false application with the Department of Buildings." As a result of Judge Demarest's finding of spoilation of evidence by the defendants , she precludes the defendants from disputing this issue, but the Movant fails to inform the Court that the April 13, 2009, decision is presently under appeal.

12.    I am compelled to point out that inaccuracy, since the Movant states in paragraph 7 that "The debtor grew to dislike the construction and accused Dr. Aloyts of falsifying construction plans and, submitting plans to the Department of Buildings that were not approved by the cooperative board." The problem did not arise from the fact that I "grew to dislike" the construction. The Movant fails to inform the Court that, as Board president, I received a complaint from a second floor resident that her apartment floor had begun to sag. When we consulted an engineer, and investigated the construction, we were informed by the engineer that a beam had been improperly cut that adversely affected the building's structure. Although the Plaintiffs may dispute that they caused this problem, I was duty-bound to protect the integrity of the building and ensure that the law was complied with.

13.    I have been defending against the Action since 2006. The legal fees I have incurred since this action was commenced against me have caused financial ruin for me and my family. I have been forced to attempt to sell the two co-operative apartments to pay my debts. My wife was forced to file a chapter 13 petition: her case is pending before the Court.

14.    My family and I desperately need, both financially and emotionally, the breathing spell afforded by my bankruptcy filing. My case was just converted to a chapter 11 case less than two months ago. I have been struggling to retain counsel to assist me, which has been a bit

4

of a delay of my efforts.  But I believe I have now secured counsel that can assist me.

Moreover, I believe that the sale of one of my apartments will provide me with the much needed

funds to prosecute my case.  I simply can not afford the cost of continuing litigation without such

a sale, and so soon into my reorganization.  Stay relief would substantially interfere with my

reorganization so early into the process.

15.    Furthermore, I believe the Plaintiffs are free to proceed against the Co-op despite

my bankruptcy filing.  Upon information and belief, a motion to sever was made before Judge

Demarest and she indicated on the record, without ruling, that she saw no reason why severing

me from the action could not occur.  Attached hereto as Exhibit E is a transcript of the hearing

that occurred before Judge Demarest on February 23, 2010.  On Page 7, Line 12, of the

transcript, Judge Demarest states the following to Plaintiffs' counsel:

> You can proceed against 601.  601 is the party and privity
> with your client.  601 is the owner of the building.  601
> is responsible for the acts of whatever Mr. Berger did or
> didn't do, and they may eventually go off, but you can hold
> that in abeyance, but I don't really see why you are deferring
> this matter.  It's been scheduled for trial.  It's been litigated
> to death, and now you don't want to proceed.

For all of these reasons, I respectfully request that the Court deny the Motion at this time.

I swear under penalty of perjury that the foregoing is true and accurate.

Brooklyn, New York
April 23, 2010                                        *S/Jeff Berger*
                                                     Jeff Berger

Exhibit "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------x

BELLA ALOYT, ET ANO

                    PlaintiffS,                              AFFIDAVIT

          -   against --

601 TENANTS CORP. AND JEFF BERGER

                    Defendants

-------------------------------------------------------------------x

State of New York    )
                     )ss:
County of New York )

          Henry Marek, being duly sworn, deposes and says:

          1. He is a Professional Engineer, licensed to practice his profession with an office

located at 3543 Amboy road, Staten Island, New York and makes this affidavit in support

of the within application by the defendants.

          APPLICATION FILED BY PLAINTIFFS WITH BUILDINGS DEPARTMENT
          LACKS WRITTEN CONSENT OF OWNER AS REQUIRED BY LAW

          2. To file a building application with the NYC Department of Buildings, applicant
must submit a PW-1Form (Exhibit "A") annexed, with the owners signature on page 4.

          3. The Court is asked to note that Exhibit "A" ( the PW-1 Form) has special

signing requirements when an Applicant's owner is corporation, as herein, the names and

addresses of two officers must be provided and one owner must sign.

          4. Also the applicant must file a form TR-1 (Exhibit "B" annexed. On page 2

thereof, the owners signature and name are required therein.

                                        1

THE APPLICATION WILL BE REJECTED BY THE
NYC DEPARTMENT OF BUILDINGS FOR PROVIDING FALSE INFORMATION

5. It is the deponent's opinion, as an experienced professional engineer that this Application filed by the plaintiffs is a nullity because they failed to obtain the prior written consent of the owner and further, filed such application falsely by signing for both themselves and the owner giving a false impression that the Owner had consented when it had not.

6. Deponent has emphasized, that from his review of the NYC Department of Buildings file in this case, because the owner never consented in advance to the Alteration, and the Application Filed was false by asserting consent, the procedure followed by this Applicant was flawed from its inception by total non-compliance with the Building Code and is a nullity

Sworn to before me this
6th day of June, 2007

Notary Public
State of New York

Henry Marek (PE)

MARK B. REKHTMAN
Notary Public, State of New York
No. 01RE6060768
Qualified in New York County
Commission Expires July 2, 2007

2

Exhibit "B"

# URBAN ENGINEERING, PC

Structures, Buildings, Rehabilitation

415 76ᵗʰ Street, LL, Brooklyn, NY 11209
Email: engineers@urbancorp.biz
Tel: (718) 745-5795
Fax: (718) 745-2378

September 14, 2009

ATT: Mr. Arthur Morrison, Esq
11 Skyline Drive
Hawthorne, NY 10532

**Re: 601 Brightwater Court**
**Block No. 8691 / Lot no. 11 in Brooklyn**
**DOB Alteration No. 301920367**

Dear Mr. Morrison:

Upon your and building owner representative's request, Urban Engineering, PC reviewed the filing and permits record related to the conversion of the a residential unit on the first floor of the building located at 601 Brightwater Court in Brooklyn, New York to a medical diagnosis/treatment facility. The following is our findings:

1. The construction work commenced on the first floor of the building to convert the residential unit into a medical diagnosis/treatment facility constitutes a violation of the New York City Building Code and the rules and regulations of the New York City Department of Buildings since the required alteration application was not filed with the New York City Department of Buildings for approval of the conversion and amendment of the current certificate of occupancy of the building.

2. The proposed alteration constitutes a change of use as well as occupancy of the subject unit/part of the building. The existing use group 2 is proposed to be changed to use group 4 (community facility) and the existing Residential occupancy is proposed to be changed to Medical Diagnostic/Treatment Facility. The proposed change in use and occupancy require the amendment of the current certificate of occupancy of the building to reflect the new use and occupancy.

3. The New York City Building Code requires the filing of an Alteration-Type I with the New York City Department of Buildings for building alteration requiring the amendment of the certificate of occupancy of a building. A building's certificate of occupancy can not be amended by the filing of an alteration-Type II.

4. It appears that the share holder assigned to the residential unit subject of the conversion has filed an alteration application-Type II with the New York City Department of Buildings under number 301920367 which does not include any information related to the amendment of the building's certificate of occupancy. The

**URBAN ENGINEERING, PC**                415 76th Street, LL, Brooklyn, NY 11209
Structures, Buildings, Rehabilitation_                              Email: engineers@urbancorp.biz
                                                                    Tel: (718) 745-5795
                                                                    Fax: (718) 745-2378

Department of Buildings clearly required the applicant to file an alteration Type I and instructed the applicant to amend the certificate of occupancy as indicated in item number 1 of the objection list. It is not clear to us under which circumstances this alteration application (Type II / 301920367) was approved since it is our experience that such approval is customarily not granted by the Department of Buildings until an alteration application-Type I is filed in conjunction with the alteration application-Type II to amend the certificate of occupancy. It is our belief that this was an oversight by the Building Department's plan examiner.

5. It appears also that the New York City Department of Building has audited the approved alteration application and discovered the Building Code violation in the filing procedures related to this conversion as evident in the Department of Building's letter dated May 11, 2007 which stated the Department's intent to revoke the approval of alteration application No 301920367 unless an alteration-Type I application is filed and an amended certificate of occupancy is acquired. This was indicated in the objections issued by plan examiner James Bruce as a result of the conducted audit.

6. Upon researching the records of the New York City Department of Buildings, we did not find any records indicating the share holder's compliance with the Department's requirement. Consequently, the conversion work remains to this date in violation of the New York City Building Code and the rules and regulations of the New York City Department of Buildings. It is our recommendation, based on our experience and to the best of our knowledge, that all construction work stops until an alteration type-I is filed with, and approved by, the New York City Department of Buildings to amend the building's certificate of occupancy.

7. Upon review of "Owner Statement" section of the Plan/Work Approval Application (Form PW-1) submitted with alteration-Type II No 301920367, we noted that a person by the name, Edith K. Kovnat, signed the application presenting him/herself as the building owner or his/her representative. No indication was made to the "Cooperative/corporation" type of ownership of the building which would have required the signature of a second officer of the Cooperative Board. In addition, it is not clear whether the signor had the authorization to represent the Coop Board on the application.

Urban Engineering, PC

Nizar Y. Khoury, PE
Principal engineer

Exhibit "C"



**NYC Department of Buildings**
280 Broadway, New York, NY 10007
Patricia J. Lancaster, F.A.I.A., Commissioner

(212) 566-5000, TTY: (212) 566-4769

**Bryan Winter**
**Deputy Borough Commissioner**
210 Joralemon Street
Brooklyn, NY 11201
Phone: (718) 802-3676
Fax: (718) 802-4098

April 04, 2008

KOVNAT EDITH K OWNER                    (Owner)
NA 601 BRIGHTWATER COURT APT 1G
BROOKLYN NY 11235

DAVID SILBERMAN                         (Applicant)
CONSTRUCTION AND CUSTOM REMODELI
147 Norfolk Street Brooklyn, NY 11235

Igor Ioffe - Const & Custom Remodel     (Contractor)
147 Norfolk Street
Brooklyn, NY 11235

RE:    **REVOCATION OF APPROVAL(S) AND PERMIT(S)**
       601 BRIGHTWATER COURT
       Block: 08691  Lot: 00011
       Application #: 301920367

Dear Sir or Madam:

        By letter dated March 05, 2008, the Department of Buildings notified you of its intent to revoke the approval and permit issued for work at the premises in connection with the application referenced above. As of this date, the Department has not received sufficient information to demonstrate that the permit should not be revoked.

        Therefore, pursuant to Section 27-197 of the Administrative Code of the City of New York ("AC"), the **PERMIT IS HEREBY REVOKED.**

        In the event an order to stop work is not currently in effect, you are hereby ordered to **STOP ALL WORK IMMEDIATELY.**

                                        Sincerely,

                                        Bryan Winter
                                        Deputy Borough Commissioner

BW/CS
Cc:    Inspections Manager              Revocation File
       Application Folder               Premises file
       , Auditor

Exhibit "D"

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

————————————————————X

INDEX #

BELLA B. ALOYTS & EDITH K. KOVNAT

Plaintiff                                          **COMPLAINT**

-against-

601 TENANTS CORP., JEFF BERGER

Defendant

————————————————————X

Plaintiffs, BELLA B. ALOYTS & EDITH K. KOVNAT, complaining of the Defendant, by their attorneys Wenig Saltiel & Greene LLP respectfully alleges as follows:

1)      Plaintiffs, BELLA B. ALOYTS & EDITH K. KOVNAT (hereinafter "Tenants") are individuals licensed to practice medicine in the State of New York, and who at all times mentioned herein have resided in Kings County.

2)      On December 9, 2004 Plaintiffs entered into a written lease with Defendant 601 Tenants Corp. approximately 950 square feet of the basement of 601 Brightwater Court, Brooklyn, NY (hereinafter "Demised Premises") for the purpose of having a medical office (hereinafter "Lease").

3) Upon information and belief, 601 Tenants Corp. is a cooperative corporation authorized to conduct business in New York with a principal place of business located at 601 Brightwater Court, Brooklyn, NY

4) Upon information and belief, 601 Tenants Corp. (hereinafter "Landlord") is the owner in fee of the building located at 601 Brightwater Court, Brooklyn, NY.

5) Upon information and belief, Jeff Berger is a natural person who at all times herein resided at 601 Brightwater Court, apt. 11, Brooklyn, NY and has

6) At all times herein mentioned, the Tenants have been in lawful possession of the Demised Premises.

7) On or about August 28, 2006, the Defendant sent a Notice to Cure (hereinafter "Notice") to Plaintiffs that threatens to terminate Tenants' Lease if the alleged default is not cured.

8) The Notice alleges that the default arises from Plaintiffs' conducting construction in the Demised Premises without permits.

9) That Plaintiffs maintain that no default exists and dispute Defendants' allegation that it did not consent to construction in the demised premises, but stand ready, willing and able to cure any purported leasehold defaults.

10) That Plaintiffs do not have an adequate remedy at law.

### AS AND FOR A FIRST CAUSE OF ACTION

11) Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "10" as if fully set forth herein at length.

12) That a justicable controversy exists between the parties as to Plaintiffs' rights under the Lease and the Notice.

13) That Plaintiffs seek a judgment declaring that the Plaintiffs' Lease is in full force and effect and that there are no leasehold violations as alleged by the Defendant 601 Tenants Corp..

### AS AND FOR A SECOND CAUSE OF ACTION

14) Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "14 as if fully set forth herein at length.

15) That Plaintiffs are entitled to a preliminary and permanent injunction enjoining the Defendant 601 Tenants Corp. from taking any steps to terminate the Plaintiffs' leasehold based upon the purported defaults contained in the Notice.

### AS AND FOR A THIRD CAUSE OF ACTION

16) Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "16" as if fully set forth herein at length.

17) That although Defendant 601 Tenants Corp. consented to the construction of Plaintiffs' medical office, it has deliberately hindered construction for months with the hope that Plaintiffs would surrender their valuable leasehold.

18) That the lengthy withholding of consent and interference with construction was done in bad faith in the hopes that Plaintiffs would surrender their valuable leasehold.

19) That Defendants interference with Plaintiffs' business has prevented them from opening a medical office in the Demised Premises.

20) As a direct result the operation of Plaintiffs' medical practice was adversely affected causing damages in an unascertained amount but reasonably believed to be not less than $750,000.00

21) Plaintiffs demand judgment in a sum to be determined by this Court but reasonably believed to be not less than $750,000.00

### AS AND FOR A FOURTH CAUSE OF ACTION

22) Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "21" as if fully set forth herein at length.

23) That Defendant, Jeff Berger, abused his position as president of the Cooperative Board to prevent and/or further hinder construction.

24) That Defendant Berger filed various complaints with the Department of Building alleging he was the owner of the leased premises.

25) That Defendant Berger did advise in December 2005 that neither he nor the Board would honor the Lease for the Demised Premises and he would do

whatever was necessary to prevent construction in the basement and the opening of the medical office.

26) Defendant Berger's actions in holding the Lease to be a nullity were *ultra vires*, outside the scope of his authority as President of the Cooperative Board, and calculated to interfere with Plaintiffs' tenancy and business.

27) That by reason of the foregoing Plaintiffs have been damaged in an amount to be determined by the court but reasonably believed to be not less than $250,000.00.

28) Plaintiffs demand judgment of Defendant Berger in an amount to be determined by the court but reasonably believed to be not less than $500,000.00.

### AS AND FOR A FIFTH CAUSE OF ACTION

29) Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "30" as if fully set forth herein at length.

30) That although a Lease was entered into for the Demised Premises with the express purpose of operating a medical office. Plaintiffs obtained construction approval by the Department of Buildings, however, Defendants still took steps to file complaints with the Department of Buildings, hinder construction and interfere with the tenancy.

31) That as a direct result of these complaints, the Department of Buildings sent an inspector to the premises. Plaintiffs were not notified of the inspection, did not

authorize Defendants to enter the demised premises, and were not present at the time the Inspector appeared to conduct the inspection.

32) Upon information and belief, Defendant Berger, on behalf of the Board, illegally broke into the Demised Premises to allow the Inspector for the Department of Building Inspector access. At the time of the illegal entry the DOB work permits, which had prominently been displayed, had mysteriously vanished, resulting in the imposition of a violation for work without a permit.

33) That but for Defendants conduct, no violation would have been issued.

34) That Defendants did breach the lease and its covenants by their illegal trespass.

35) That by reason of the foregoing Plaintiffs have been damaged in an amount to be determined by the court but reasonably believed to be not less than $250,000.00.

36) Plaintiffs demand judgment of Defendant in an amount to be determined by the court but reasonably believed to be not less than $250,000.00.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a) On the First cause of action, a judgment declaring that the Lease is in full force and effect and there are not leasehold defaults as alleged in the Notice; and

b) On the Second Cause of action a preliminary and permanent
injunction enjoining Defendant from taking any steps to terminate the
Plaintiffs' leasehold based upon the purported defaults contained
within the Notice.

c) On the Third Cause of Actions judgment in an amount to be
determined by this court but reasonably believed to be $750,000.00;
and

d) On the Fourth Cause of Actions judgment in an amount to be
determined by this court but reasonably believed to be $500,000.00;
and

e) On the Fifth Cause of Actions judgment in an amount to be
determined by this court but reasonably believed to be $250,000.00;
and

f) As to all causes of action, the costs and disbursements of this action
and for such other and further relief as the Court deems just and
proper under the circumstances.

Dated: Brooklyn, NY
     September 28, 2006

                           Yours etc,

                           Wenig Saltiel & Greene LLP
                           Attorney for Plaintiffs
                           26 Court Street, Suite 502
                           Brooklyn, NY 11242
                           (718) 797-5700

Exhibit "E"

1

1    SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS    COMMERCIAL DIVISION
2    - - - - - - - - - - - - - - - - - - X
     BELLA B. ALOYTS,                              Index
3                                        :    No.  30043/06
               -against-
4                                        :

5    601 TENANT'S CORP.,                 :

6                           Defendant.
     - - - - - - - - - - - - - - - - - - X        MOTION
7
                              360 Adams Street
8                             Brooklyn, New York  11201
                              February 3rd, 2010
9
     BEFORE:
10
                         HONORABLE CAROLYN DEMAREST,
11                                 Justice.

12
                         WENIG, SALTIEL & GREENE, LLP
13                       Attorneys for Plaintiff
                         26 Court Street
14                       Brooklyn, New York  11242
                         BY: LESLIE PEREZ, ESQ., of Counsel.
15

16                       EDWARD MERMELSTEIN, ESQ.
                         Attorney for Defense 601 Tenant's Corp.
17                       302 Fifth Avenue
                         New York, New York  10001
18                       BY:  MICHAEL YOUNG, ESQ., of Counsel.

19
                         ARTHUR MORRISON, ESQ.
20                       Attorney for Jeff Berger
                         11 Skyline Drive
21                       Hawthorne, New York 10532
                                  -and-
22                       SAMUEL E. KRAMER, ESQ.
                         Attorney for Jeff Berger
23                       225 Broadway
                         New York, New York
24

25                                      GLORIA ANN BRANDON,
                                        SENIOR COURT REPORTER

PROCEEDINGS                    2

1          CLERK:  Calendar Number One, Motion

2    Calendar, Aloyts Bella vs. 601 Tenants

3    Corporation, Index Number 30043 of 2006.

4          MS. PEREZ:  Leslie Perez, Wenig, Saltiel

5    for the Plaintiff, Aloyts.

6          MR. YOUNG:  Michael Young of counsel to

7    Edward Mermelstein, 601 Tenant's Corporation,

8    Defendants.

9          MR. MORRISON:  Good morning.

10    Arthur Morrison for Mr. Berger.

11          THE COURT:  For Berger; right?

12          MR. MORRISON:  Yes, your Honor.

13          THE COURT:  Good morning.

14          MR. KRAMER:  Samuel Kramer.

15    I'm the bankruptcy attorney for Mr. Berger.

16          THE COURT:  Okay.

17    All right now, we have a motion and a

18    cross-motion, notice of motion, by Mr. Morrison;

19    correct?

20          MR. MORRISON:  Yes, your Honor.

21          THE COURT:  Seeking a severance as to Jeff

22    Burger, and a cross-motion by Miss Perez.

23          MS. PEREZ:  Your Honor, we actually have an

24    application.

25          There's a bankruptcy in place.  I don't

PROCEEDINGS                        3

1    believe Mr. Berger has a right to bring this

2    motion, and I'd like to fully brief that issue.

3         THE COURT:  All right.  Did you respond to

4    the motion or --

5         MS. PEREZ:  I'm seeking time to respond to

6    Mr. Morrison's new motion.

7         MR. YOUNG:  We would also like to respond to

8    the motion, your Honor.

9         THE COURT:  Well, it does seem probably

10   necessary, but we do have the benefit, just for a

11   point of information here, Mr. Kramer.

12        MR. KRAMER:  Yes, your Honor.

13        THE COURT:  What's happening in the matter

14   of the bankruptcy?

15        MR. KRAMER:  At the present time, as we

16   discussed when we were on the conference call

17   about a week or two ago, the only matter

18   presently pending is the Chapter 13, and the

19   motion is returnable on February 25th wherein Mr.

20   Berger is seeking to convert the case from a

21   Chapter 13 to a Chapter 11.

22        There are some matters in the Chapter 13,

23   such as adjourned creditors meetings.  Pursuant

24   to 341 of the Bankruptcy Code, let's say that's

25   held in abeyance.  We have the more pertinent

PROCEEDINGS                    4

1    matter of the conversion motion.

2         There's nothing else pending.  There's no

3    motion to lift the stay by counsel for Plaintiff

4    in this case, or the Co-Defendant in the case, so

5    right now, the case is subject to the code,

6    subject to the automatic stay, but you know, that

7    is  --  the posture of the case may change on

8    February 25th depending whether Judge Stong

9    grants the conversion to a Chapter 11.

10        THE COURT:  And we have Mr. Young.

11        Mr. Young, I'm sure you are intermittently

12   familiar with the mechanics of 601 Tenant's

13   Corporation; am I correct?

14        MR. YOUNG:  You're not right here.

15        THE COURT:  You don't know anything about

16   the case?

17        MR. YOUNG:  I've spoken to counsel about the

18   case.  I called Mr. Mermelstein's office.  I read

19   the motion, so I know the basics of the case,

20   your Honor.

21        THE COURT:  Well, here's the question, all

22   right.  This case involves the Plaintiff's

23   purchase of a commercial premises within this

24   co-op building; right?

25        MR. YOUNG:  Right.

1    THE COURT:  And her intent to convert it to

2    a medical office, and it got very bogged down.

3    We have been fighting this battle now for years.

4    It's a 2006 Index Number.  This has been here

5    many, many years.  There's issues of spoliation.

6    There's all kinds of things going on.

7    My only question here is at the moment, what

8    is happening with the premises, and what's

9    happening to Bella Aloyts, is she moving in, not

10   moving in, wanting to move in?

11   Is there any conversation going on between

12   601 or not?

13   MS. PEREZ:  I made overtures to 601 as far

14   as settlement to, perhaps, work out some kind of

15   resolution of this matter.  They have not been

16   forthcoming in that regard.

17   THE COURT:  All right.

18   MS. PEREZ:  Dr. Aloyts cannot take

19   possession of the premises because it's still in

20   the midst of construction, as it was three years

21   ago.

22   MR. MORRISON:  May I respond, your Honor?

23   THE COURT:  Well, just one second, counsel.

24   The stay that generated by Mr. Berger's

25   bankruptcy does not automatically stay this

PROCEEDINGS                    6

1    action as to 601.

2         MR. KRAMER:  Certainly not, your Honor, and

3    there was a case that I believe is attached to

4    the moving papers here just decided last month by

5    Judge Grossman, which reiterated that very point;

6    in order for a Co-Defendant to seek the benefits,

7    shall we say, of the automatic stay of the debtor

8    Defendant, that there has to be an application

9    made, and frankly, it's a very hard burden, which

10   in my opinion they don't meet.

11        THE COURT:  Right.  I have had recent

12   occasion to examine that very issue in another

13   case.  I'm aware of how difficult it is to extend

14   a stay to a nonbankrupt Co-Defendant, and

15   certainly, in this case, I can't even conceive of

16   a basis to do this, so I am asking you, Miss

17   Perez, do you wish to pursue the case against

18   601, and why are we delaying all of this?

19        MS. PEREZ:  I don't believe that it serves

20   the interest of judicial economy to do so.

21        What we have, essentially, here would be,

22   what Mr. Morrison is proposing is two separate

23   trials involving the same evidence and the same

24   witnesses.  Why have two trials?  It doesn't make

25   any sense.  Granted the relief he's seeking under

PROCEEDINGS                7

1    CPLR 603 is within the Court's discretion, I

2    don't think it makes sense to grant it.

3         THE COURT:  You are consenting to the

4    relief, you are consenting to a stay of an action

5    based on Berger's bankruptcy?  Is that what you

6    are doing?

7         MS. PEREZ:  I don't think we have any

8    choice.

9         THE COURT:  Well, you do have another

10   choice.  I'm telling you, you have another

11   choice.  Everyone is telling you, you have

12   another choice.  You can proceed against 601.

13   601 is the party and privity with your client.

14   601 is the owner of the building.  601 is

15   responsible for the acts of whatever Mr. Berger

16   did or didn't do, and they may eventually go off,

17   but you can hold that in abeyance, but I don't

18   really see why you are deferring this matter.

19   It's been scheduled for trial.  It's been

20   litigated to death, and now you don't want to

21   proceed.

22        MS. PEREZ:  Any trial against 601 Tenants

23   can only hurt Mr. Berger.

24        THE COURT:  Well, that's not your concern.

25        MS. PEREZ:  For that reason, I believe that

PROCEEDINGS                    8

1       the automatic stay prohibits us from moving on a

2       trial from 601.

3               THE COURT:  Okay, counsel, I'm so ruling

4       right now; there's no stay against 601 Tenants.

5               I'm directing you to proceed.

6               Let's get on with this case.

7               Is there any stay from an Appellate Court

8       from anyone else, other than what you are

9       inferring from the bankruptcy?

10              MS. PEREZ:  No.

11              THE COURT:  All right.  Mr. Young, ready to

12      go?

13              MR. YOUNG:  Oh, not right at this moment,

14      your Honor, but was there also a control date

15      sometime in April.  I have a note that says that.

16      I understood that as being the trial date for the

17      case.

18              THE COURT:  Yeah.

19              MR. YOUNG:  For April 6th or April 8th.  I

20      heard a few April dates.

21              MR. MORRISON:  April 8th, your Honor.

22              THE COURT:  All right.  It's a long lead,

23      frankly.

24              MR. YOUNG:  We do have an application to

25      oppose the motion.  Based on what your Honor

1    said, I guess you're going to deny the

2    application.

3         THE COURT:  I don't know what you are

4    talking about.  Which motion?

5         MR. YOUNG:  The motion to sever, to sever,

6    to sever Mr. Berger's action from this action.

7         My instructions were to ask you, to make an

8    application to put in opposition papers, but --

9         MS. PEREZ:  We'd like to do the same, your

10   Honor.  We'd like to fully brief the issues.

11        THE COURT:  Just a second.

12        We have Mr. Morrison's motion, which is

13   dated January 26th --   which looks like to me it

14   was dated January 26th.  I don't see how there's

15   enough time given.

16        MR. MORRISON:  It was a third person, your

17   Honor, not all parties.  We tried to bring it on

18   as quickly as possible.

19        THE COURT:  I see.

20        MR. MORRISON:  And we're trying to move the

21   case, your Honor, so we cooperated.

22        THE COURT:  All right.  Response to this

23   motion is due on February 25th.

24        Now, we have motions.

25        MR. MORRISON:  May we reply, your Honor?

PROCEEDINGS                           10

1      THE COURT:  Well, you have a notice of

2      motion.  I guess you can.

3      You also made a motion, Miss Perez, and that

4      goes back to September, and I don't know if this

5      is even viable.  This is motion sequence number

6      thirteen.  This one must have been determined.

7      Can you tell from the printout, is it

8      decided?

9      The motion was, according to the printout,

10     granted.

11     MR. MORRISON:  May I address that, your

12     Honor?

13     THE CLERK:  Motion granted.  It was a short

14     form order.

15     THE COURT:  All right, this was to strike

16     defendant's scheduling of witnesses, pre-trial

17     memorandum of law, and you say it was granted.

18     Was it addressed?

19     Do you know, Miss Perez?  It's your

20     affidavit or your affirmation.  Was it limited to

21     only one of the defendants or at that time  --

22     MS. PEREZ:  It was.

23     THE COURT:  Go ahead.

24     I think it might have been at the time when

25     Mr. Morrison represented both defendants; is that

PROCEEDINGS                          11

1        right?  This was --

2                MS. PEREZ:  I don't recall.

3                THE COURT:  --  returnable the 16th of

4        September, Mr. Morrison.

5                MR. MORRISON:  To my recollection, your

6        Honor, is that they made a motion.  You signed an

7        order to show cause the 1st day of September to

8        have me withdrawn.

9                You made that order to show cause returnable

10       on September 16th.

11               On September 16th they made this

12       cross-motion.

13               THE COURT:  I see.

14               MR. MORRISON:  That was heard at the same

15       time.

16               THE COURT:  All right.

17               MR. MORRISON:  May I add my recollection as

18       to what you did?

19               THE COURT:  You may, yes.

20               MR. MORRISON:  You made a statement on the

21       record disposing of that motion, and then you

22       indicated in a short form order it's decided

23       pursuant to the record.

24               That's my recollection, your Honor.

25               THE COURT:  All right, I think that's

PROCEEDINGS    12

1    consistent with the notation, and there was

2    another motion heard that day, which was granted,

3    which was to be relieved.  I think there was

4    substitution of counsel.

5        Then there was this motion to strike, which

6    was granted, so this motion has been determined.

7        In any event, it's somewhat moot given the

8    fact that we now have quite a change in the cast

9    of characters, and what's going to happen at the

10   trial, so I think that any question of pre-trial

11   briefs, and order of witnesses, and all these

12   other issues would be de novo in a prerequisite

13   trial conference.

14       Okay, this I guess can be removed from the

15   file.

16       THE CLERK:   Yes.

17       THE COURT:  All right, so we'll just set an

18   adjourned date on this remaining motion, and,

19   Miss Perez, if you are so advised, you can always

20   seek the lifting of the stay in Bankruptcy Court.

21       Are you not interested in prosecuting this

22   case now any more?

23       MS. PEREZ:  That is not the case, your

24   Honor.

25       My client has sought, seen fit to hire

PROCEEDINGS                13

1    separate counsel for the bankruptcy case.  She's,

2    unfortunately, not in charge of how she was

3    running her case.

4         We're certainly cooperating with her, but --

5         THE COURT:  Well, Ms. Perez, I am concerned

6    that you should be in control of this case, and

7    if there is another attorney involved, that that

8    attorney should be appearing here, so that we can

9    dispose of the issues.

10        All right, I'm putting this over for the

11   17th of March for reargument.

12        MR. MORRISON:  Could we have a sooner date,

13   your Honor?

14        We're trying to deal with the motion.

15        Could it just be an adjournment for two

16   weeks, and let's in the third week --

17        THE COURT:  No, sir.  There's no reason for

18   that at all.

19        The response, the opposition is due on the

20   25th.

21        The reply will be due on the 4th, or we'll

22   say the 5th, and we'll put it on for argument on

23   3/17.

24        Okay, I guess I'll be seeing you then.

25        MS. PEREZ:  Thank you, your Honor.

PROCEEDINGS                    14

1          MR. KRAMER:  Thank you, your Honor.

2          MR. MORRISON:  Thank you.

3          THE COURT:  By the way, counsel, before you

4     leave,

5          I want the parties to be present on that

6     day.

7          MS. PEREZ:  Certainly, your Honor.

8          (Whereupon, proceedings adjourned to March

9     17th, 2010.)

10              *              *              *

11          Certified to be a true and accurate
     transcript of the minutes taken in the above proceeding.

12

13          GLORIA ANN BRANDON,
          OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25